UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HECNY SHIPPING LTD. | : |
| Petitioner, | : 24 Civ. |
| - against - | : |
| HYC LOGISTICS, INC. | : **PETITION OF**<br>: **HECNY SHIPPING LIMITED**<br>: **TO COMPEL ARBITRATION** |
| Respondent. | : |

Petitioner Hecny Shipping Limited, by and through its attorneys, Lennon, Murphy & Phillips LLC, as and for its Petition to Compel Arbitration herein, alleges upon information and belief as follows:

1. This is a Petition to Compel Arbitration of an admiralty and maritime dispute pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4.

**I. The Parties**

2. Petitioner Hecny Shipping Limited ("HSL") is a corporation organized and existing under and by virtue of the laws of a foreign country with an office and principal place of business located at 5/F., Hecny Centre, 111 Wai Yip Street, Kwun Tong, Kowloon, Hong Kong, with an agent c/o Hecny Transportation Inc., 141-07 20th Avenue, Suite 302, Whitestone, Queens, New York 11357. HSL is engaged in business as a non-vessel operating common carrier ("NVOCC") of goods by water for hire.

3. Respondent HYC Logistics, Inc. ("HYC") is a corporation organized and existing under and by virtue of the laws of one of these United States with an office and principal place of business located at 2600 Thousand Oaks Boulevard, Suite 1350, Memphis, TN 38118. Upon information

and belief, HYC is engaged in business as a delivery agent for cargo shipments inbound into the United States from foreign locations, and as a freight forwarder and customs broker.

## II. Jurisdiction and Venue

4. This Honorable Court has subject matter jurisdiction over this action under 28 U.S.C. § 1333 and Fed. R. Civ. P. 9(h) because the claims to be arbitrated arise out of the breach of an admiralty and maritime contract.

5. The Court has personal jurisdiction over the respondent on the basis of the latter's actions in communicating with a cargo receiver located in the Borough of Manhattan, City and State of New York; providing freight forwarding and customs brokerage services to the cargo receiver; accepting one or more Letters of Indemnity from said cargo receiver and releasing cargo shipments to said cargo receiver, all as are set forth more specifically and in greater detail below.

6. Venue in this district is proper pursuant to 28 U.S. Code § 1391(b)(2), which provides that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." In this action, a substantial part of the events or omissions giving rise to the claim occurred in this district and a substantial part of the property that is the subject of the action was and may still be located here.

## III. The Contract Between the Parties

7. In the Spring of 2013, HSL and HYC entered into a Non-exclusive Agency Agreement whereby HYC was to act as an agent for HSL in connection with the latter's work as an NVOCC. In Clause 1.1 of the contract, HYC agreed to "promote HSL's NVOCC/freight forwarding services, arrange customs clearance, trucking and distribution and other related services in all of Agent's locations." As part of this work, HYC was to sign and issue bills of lading on behalf of

HSL "in accordance with applicable law, and only upon written instructions from HSL" and to arrange for documentation and clearance of cargo "in accordance with procedures issued by HSL and with government regulations."

8. In addition, and of particular relevance to the claims underlying this action, HYC was to deliver cargoes transported for HSL at destination and, before doing so, was to obtain surrender of the bills of lading HSL had issued for the shipments. Clause 1.1 of the Agency Agreement provided in part as follows:

> Neither Agent or any person/company whose services Agent may use shall release the cargo unless and until HSL's original bills of lading are surrendered. If release is made without the surrender of the HSL original bills of Jading, unless release is authorized in writing by HSL, Agent shall be held fully liable for reimbursing HSL for any fees, claims, damages, or losses that HSL may incur, including court costs and attorneys fees, arising from the release of the cargo.

A copy of the Agency Agreement, signed for and on behalf of both parties, is attached as Exhibit 1 to this Petition.

9. Clause 10 of the Agency Agreement, entitled "Legal Disputes," reads as follows:

> In the event of any disputes, which may arise out of or relating to this Agreement during its tenure, the parties shall endeavour to reach an amicable settlement and if they fail to reach a settlement it may be referred to the Court of Law or to arbitration. In the event HSL is the defendant in any action or request for arbitration instituted by Agent, venue shall be in Hong Kong under the rules then in effect in the Court of Law or in the Hong Kong arbitration institute. If Agent is the defendant in any action or request for arbitration brought by HSL, venue shall be in the country where Agent is based under rules then effective in the capital city of the appropriate court of law or in a recognized arbitration institute. Any arbitration shall be conducted through written briefs, affidavits and counter-affidavits. There shall be no evidentiary hearings unless the arbitrator determines that a limited hearing is necessary to resolve a disputed issue of fact. The decision of any arbitrator or arbitrators shall be considered final.

As can be seen, with respect to arbitration, where, as in this case, HYC is the defendant, "venue shall be in the country where Agent is based under rules then effective . . . in a recognized arbitration institute."

### IV. The Shipments at Issue

**A. The Detail Fashion shipments**

10. One of the cargo shippers in China that has used HSL's transportation services is Detail Fashion Limited ("DFL") of Tianjin, China.

11. During the time from April 6, 2023 to July 24, 2023, DFL shipped ten containers holding cartons said to contain women's apparel with HSL, who issued nine "house" bills of lading for the shipments. In each case, the consignee and notify party was Louise Paris Ltd. ("Louise Paris"), 1407 Broadway, Suite 1405, New York, NY 10018 and the delivery agent was HYC. The containers in seven of the nine shipments were to be discharged (i.e., unloaded) from the carrying vessels in the Port of New York while the containers in the remaining two shipments were to be discharged in Long Beach, CA.

12. In accordance with standard shipping industry practice and its obligations pursuant to the Agency Agreement, HYC was to withhold delivery of the shipments to Louise Paris until the latter surrendered the HSL bills of lading to HYC. Upon information and belief, to obtain the bills of lading, Louise Paris was required to make payment to DFL for the apparel that had been shipped thereunder.

13. In the Fall of 2023, HSL learned that Louise Paris had not paid DFL for the merchandise and had obtained possession of it without surrendering the HSL bills of lading to HYC, as required. Alleging breach of the bills of lading contracts, DFL filed a lawsuit against HSL in Court in Shanghai, China, alleging damages in the amount of RMB 5,677,710.86 yuan (approximately US $798,000) and obtaining an attachment of funds in HSL's bank account in that jurisdiction in the amount of $791,090.09.

14. HSL notified HYC of what happened and demanded that HYC assume the defense of DFL's claims against HSL and indemnify HSL against any losses.

15. HYC responded to the situation by arranging payment in the amount of $791,090.09 directly to DFL.  In return, DFL released the attachment of HSL's funds in its bank account in Shanghai and, after the fact, authorized the release of the shipments to Louise Paris.

16. As a result of the lawsuit DFL filed against HSL in Shanghai and the attachment of HSL's funds, HSL sustained damages in the amount of $19,572,72 consisting of legal fees and trucking charges.

17. On January 25, 2024, HSL invoiced HYC for most of these charges but HYC failed to pay the invoice.

18. By letter to HYC dated May 3, 2024, Lennon, Murphy & Phillips, LLC, as attorneys for HSL, demanded that HYC pay the sum of $19,572,72 set forth above as well as $8,335.00 in Shanghai local charges that HSL incurred with a separate set of shipments (to be described below) that HYC delivered to Louise Paris without obtaining surrender of the HSL bills of lading.  HYC has failed to respond to this letter in any way.  A copy of the letter is attached as Exhibit 2 to this Petition.

**B. The Second Set of Shipments**

19. The "Shanghai local charge" mentioned above relates to thirteen other shipments, involving eighteen containers of cargo, for which the shippers in China have not settled local charges in Shanghai and have not provided the HSL bills of lading in a situation where HYC has already released the cargo at destination to Louise Paris.

20. The second set of shipments took place during the time from March 27, 2023 until July 30, 2023 and were made by the following shippers:  Dongyang Pate New Material Corporation;

Ningbo Yuanlin Textile Co., Ltd.; Shanghai Suxiao Clothing Corp., Ltd. and Nantong Chengjia Co., Ltd. In each case, the shipper shipped one or more containers holding cartons said to contain girls' or women's apparel with HSL, who issued nine "house" bills of lading for the shipments. In each case, the consignee and notify party was Louise Paris Ltd., 1407 Broadway, Suite 1405, New York, NY 10018 and the delivery agent was HYC. The containers in five of the thirteen shipments were to be discharged from the carrying vessels in the Port of New York while the containers in the remaining shipments were to be discharged in Los Angeles and Long Beach, CA.

21. HSL believes that, since HYC delivered the shipments listed above without obtaining the original HSL bills of lading, Louise Paris did not pay the shippers for the goods covered by the bills. That, in turn, has exposed HSL to claims by the shippers for the value of the material, similar to the claims DFL asserted in its Shanghai lawsuit.

22. In the May 3, 2024 letter to HYC described in paragraph 18 above, Lennon, Murphy & Phillips, LLC, as attorneys for HSL, wrote to HYC in part as follows:

> HSL requires that HYC protect HSL from such claims. Specifically, HSL hereby demands that HYC provide security acceptable to HSL in the amount of no less than $1,425,000 that HSL can draw on in whole or in part in the event the above-named shippers, or one or more of them, file suit or otherwise claim against HSL for Louise Paris' nonpayment for the goods covered by the subject bills of lading and related damages. Alternatively, HSL requires that HYC obtain from the shippers and provide to HSL acceptable written confirmation that the shippers agreed to the release of the cargo without surrender of the original HSL bills of lading.

As explained in paragraph 18 above, HYC has failed to respond to the May 3rd letter in any way.

### V. Demand for Arbitration

23. When neither HSL nor its attorneys received a response to the aforementioned letter of May 3, 2024, HSL had its attorneys send a second letter to HYC to demand arbitration on May 15, 2024. HSL nominated Louis Sheinbaum, 1173 W. Laurelton Parkway, Teaneck, NJ 07666 to

be the sole arbitrator in the matter and asked that HYC agree to have Mr. Sheinbaum serve in that capacity. Alternatively, HSL asked HYC to nominate an arbitrator so that HYC's nominee and Mr. Sheinbaum could confer and agree on a chair for a three-person arbitration panel. A copy of the letter is attached as Exhibit 3 to this Petition.

24. HYC has failed to communicate with HSL or its attorneys, Lennon, Murphy & Phillips, LLC, in response to the May 15th arbitration demand letter. As a result, HSL is aggrieved by HYC's refusal to arbitrate the disputes described herein, despite and in breach of the arbitration requirement in the "Legal Disputes" clause in the Agency Agreement between the parties.

## VI.  Basis for Order to Compel Arbitration

25. This Honorable Court has the power to order that arbitration proceed in this district, despite the fact that the "Legal Disputes" clause in the Agency Agreement does not specify a location, other than "in the country where Agent is based." The Court also has the power to require HYC to appoint an arbitrator or to appoint an arbitrator on HYC's behalf.

26. With respect to the location of the arbitration, section 4 of the FAA, 9 U.S.C. § 4, provides in relevant part as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

27. With respect to the appointment of an arbitrator, section 5 of the FAA, 9 U.S.C. § 5, provides as follows:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

Here, there has been a lapse in the naming of an arbitrator as HYC has failed to respond to HSL's proposal that Mr. Sheinbaum serve as the sole arbitrator or, alternatively, that HYC appoint an arbitrator so that HYC's appointee and Mr. Sheinbaum can confer and select a chair person for the panel.

28. Case law requires only that the petitioner establish that the Court have personal jurisdiction over the respondent, which is the case here.

29. Pursuant to N.Y. C.P.L.R. § 302(a)(1), HYC subjected itself to the Court's personal jurisdiction by engaging in the following conduct:

- By agreeing to serve and by serving as the Delivery Agent on shipments HSL transported to the United States on which Louise Paris, Ltd., a New York corporation with its office and principal place of business in the district, was identified as the consignee and notify party;

- Upon information and belief, HYC communicated with Louise Paris to provide information about the shipments, including their estimated or actual arrival dates;

- Communicated with Louise Paris concerning Louise Paris' desire to obtain delivery of the shipments without surrendering the HSL bills of lading;

- Upon information and belief, HYC received, accepted and relied upon Letters of Indemnity (or some similar agreement) provided by Louise Paris instead and in lieu of surrender of the HSL bills of lading;

- Gave clearance or authorization to the vessel operating ocean carriers with whom HSL contracted to have the shipments transported to New York and other locations in the United States to release the shipments to Louise Paris;

- By its conduct in accepting the Louise Paris Letters of Indemnity (or some similar agreement) instead of demanding surrender of the HSL bills of lading, HYC enabled Louise Paris to obtain possession of the shipments without making payment for the goods to the shippers, exposing HSL to an actual lawsuit filed by DFL and the likely commencement of proceedings by the shippers on the Second Set of Shipments;

- Worked with Louise Paris to engage in conduct that resulted in a breach of the Agency Agreement, to the serious detriment of HSL; and

- Was directly involved in causing the harm that HSL seeks to have remedied through arbitration, which resulted from HYC's communications and collaboration with a company (Louise Paris) located in this district, enabling Louise Paris to take delivery in this district of shipments transported under HSL bills of lading.

30. Since HYS is subject to personal jurisdiction in New York, this Honorable Court has the power to order that arbitration pursuant to the Agency Agreement take place in this district and it has the power to order HYC to accept Mr. Sheinbaum as the sole arbitrator or to name its own appointee to confer with Mr. Sheinbaum and select a chair person for the panel.

WHEREFORE, petitioner Hecny Shipping Line prays for an Order of this Court directing respondent HYC Logistics, Inc. to (a) arbitrate with petitioner in this district and (b) either accept petitioner's nominee Louis Sheinbaum as the sole arbitrator or name its own appointee to confer with Mr. Sheinbaum and select a chair person for the arbitral panel, failing which the Court should appoint the second arbitrator pursuant to 9 U.S.C. § 5.

Dated: New York, NY
       June 19, 2024

LENNON MURPHY & PHILLIPS, LLC
Attorneys for Petitioner Hecny Shipping Line

_____
      Keith W. Heard

The Graybar Building
420 Lexington Ave., Ste. 300
New York, New York 10170
(212) 490-6050 (T) - (212) 490-6070 (F)
kwh@lmplaw.net